**SOTEREANOS, INC., a corporation, Appellant,**

v.

**ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH, and William P. Damico.**

Commonwealth Court of Pennsylvania.

Argued March 18, 1998.

Decided April 17, 1998

John D. Eddy, Pittsburgh, for appellant.

Scott D. Cessar, Pittsburgh, for appellee, William Damico.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, FLAHERTY and LEADBETTER, JJ.

KELLEY, Judge.

Sotereanos, Inc. appeals from an order of the Court of Common Pleas of Allegheny County (trial court) which affirmed a decision of the Zoning Board of Adjustment of the City of Pittsburgh (zoning board). The zoning board granted William P. Damico's (Damico) request for dimensional variances necessary to construct a parking garage on his property located in the Mount Washington area of Pittsburgh at 113 Cohasset Street. We reverse.

Damico is the owner and operator of the Cliffside Restaurant located at 1208 Grandview Avenue on Mount Washington. In 1979, Pittsburgh City Council granted Damico a conditional use to convert the vacant second floor of the building housing the Cliffside Restaurant to restaurant use, with the express condition that Damico provide fifteen (15) parking spaces for the restaurant. Since most of the existing parking on this stretch of Mount Washington is owned by Damico's competitors, including Sotereanos,

Damico has been unable to provide the required fifteen parking spaces, and the second floor of the 1208 Grandview Avenue property has remained idle.

In 1994, Damico purchased property located at 113 Cohasset Street in a neighboring C-1 Neighborhood Retail District. Thereafter, Damico requested permission from the zoning administrator to raze an existing one-story family dwelling and erect a one-story parking garage for use by his customers of the Cliffside Restaurant located at 1208 Grandview Avenue. The use of the Cohasset Street property for a garage as proposed is permitted in a C-1 Neighborhood Retail District as a community garage by a use exception under section 989.03(b)(2)(A)(2) of the Pittsburgh Code of Ordinances (zoning code).

The Cohasset Street property is bounded on three sides by parking lots, including Sotereanos' lot, and on one side by residential property. The parking facility erected on the Cohasset Street property will be used exclusively for patrons and employees of Damico's Cliffside Restaurant located at 1208 Grandview Avenue.

The zoning administrator denied Damico's request and Damico appealed to the zoning board. Before the zoning board, Damico requested that the board grant the dimensional variances necessary to construct a two level, twenty-six (26) space parking garage on the Cohasset Street property. Damico's plans involve a side yard variance of five feet instead of the required fifteen feet and a rear yard setback of zero instead of the required twenty feet.

Following a hearing, the zoning board granted the requested variances. Based on Damico's inability to open the second floor of his Cliffside Restaurant located at 1208 Grandview Avenue because of the lack of parking on Mount Washington, the zoning board opined that the denial of the requested variances for the Cohasset Street property would constitute practical difficulty or unnecessary hardship to Damico. The zoning board concluded that Damico had no reasonable alternative but to acquire the Cohasset Street property with the intention of building a parking facility to meet the parking re-

quirements imposed by the 1979 grant of a conditional use to Damico for the Grandview Avenue property. The zoning board deemed Damico's situation to be unique, not to be self imposed within the meaning of applicable law, and concluded that without the required parking, he would suffer unnecessary hardship.

■■■ Sotereanos, owner of the Grandview Saloon and Damico's competitor, appealed the zoning board's decision to the trial court. Based on this court's decision in *Canter v. Township of Abington Zoning Hearing Board*, 43 Pa.Cmwlth. 132, 401 A.2d 1240 (1979), the trial court affirmed the zoning board's decision. This appeal followed.[1]

On appeal, Sotereanos raises the following issue:

Whether the trial court erred in affirming the zoning board's granting of dimensional variances for the construction of a parking garage on property known as 113 Cohasset Street, where there was no evidence presented, nor finding made, that the property would suffer unnecessary hardship without the variances; and where the only finding of unnecessary hardship pertained to an economic detriment to the property owner's nearby restaurant business which allegedly would suffer financially without the parking garage.[2]

■■■ It is well settled that the reasons for granting a variance must be substantial, serious and compelling. *Id.* The party seeking the variance bears the burden of proving that (1) unnecessary hardship will result if the variance is denied; and (2) the proposed use will not be contrary to the public interest. *Id.* The hardship must be shown to be unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district. *Id.* A variance will not be granted solely because the applicant will suffer an economic hardship if he does not receive one. *O'Neill v. Zoning Board of Adjustment*, 434 Pa. 331, 254 A.2d 12 (1969).

On appeal herein, Sotereanos argues that Damico has failed to demonstrate any hardship unique to the Cohasset Street property. Sotereanos contends that the only hardship demonstrated by Damico before the zoning board was that which would presumably be experienced by the Cliffside Restaurant located at 1208 Grandview Avenue, not the Cohasset Street property. Further, Sotereanos argues that the trial court mistakenly relied on *Canter* to support the zoning board's grant of dimensional variances to Damico. We agree.

In *Canter*, the property owner operated a retail business located in an F–1 residential district. The building housing the property owner's business was previously owned by the fire company. In order to comply with the parking requirements of the zoning ordinance, the fire company agreed to permit the

1. In an appeal from a zoning board decision, where the trial court takes no additional evidence, this court's scope of review is limited to determining whether the zoning board committed a manifest abuse of discretion or an error of law in granting the instant variances. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). This court may conclude that the zoning board abused its discretion only if its findings are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

2. We note that there is a dispute as to whether Sotereanos has waived the issue with respect to the granting of the rear yard variance. The trial court noted in its opinion that this particular variance request went unchallenged before the zoning board; therefore, any objections at the trial court level were waived. Based on the trial court's notation and the fact that Sotereanos does not argue each dimensional variance separately in its brief, Damico contends that the issue with respect to the rear yard variance has been waived.

Sotereanos disagrees and points out that in its appeal to the trial court it challenged the granting of both the side yard and rear yard variances. In addition, Sotereanos contends that it properly challenged the granting of both dimensional variances on further appeal to this court.

A review of the record herein reveals that the issue with respect to the rear yard variance has not been waived. While the zoning board states in its decision that no testimony was presented objecting to the rear yard variance, the zoning board did discuss the variance in its decision and granted the requested variance. Moreover, the record shows that on appeal to the trial court from the zoning board's decision, and to this court, Sotereanos challenged the grant of the rear yard variance.

property owner's employees and customers to use the parking lot at its new firehouse located on the opposite side of the street from the property owner's business. However, four years later, the fire company erected "no parking" signs at the entrance to the fire company lot being utilized by the property owner's employees and patrons. Consequently, the property owner purchased a nearby vacant lot for use as a parking lot for the convenience of his customers and requested a special exception or variance from the zoning board since this property was zoned in an "H" residential district. The evidence presented before the zoning board showed, *inter alia*, that the vacant lot was nonconforming in size with respect to an "H" residential district.

The zoning board denied the property owner's request for a special exception or a variance. On appeal, the trial court reversed concluding that the zoning board had abused its discretion in not granting a variance for the lot. On further appeal to this court, the township contended that the property owner failed to establish a hardship peculiar to the particular property where he wished to build the parking lot, and further that whatever hardship the property owner suffered was purely economic.

In affirming the trial court, this court held that the property owner met his burden of proving that the unique physical characteristics of the subject property established unnecessary hardship. *Canter*, 401 A.2d at 1242. The evidence showed that the lot failed to meet the dimensional requirements for the "H" district in which it was located to permit the construction of a residential dwelling. *Id.* Further, the property was surrounded on three sides by commercial uses, and on the fourth by a residential dwelling. *Id.*

With respect to the issue of whether the hardship suffered by the property owner was purely economic, this court distinguished our decision in *Kollock v. Zoning Board of Adjustment*, 27 Pa.Cmwlth. 624, 367 A.2d 339 (1976) wherein this court denied the grant of a variance to permit parking on a residential lot adjacent to the landowner's business, concluding that necessity to expand the business property established a mere economic hardship to the owner. We pointed out in Canter, that the facts in *Kollock* were distinguishable because the property owner offered no evidence to show that his land was unsuitable for residential use. *Id.* We stated further in *Canter*, that the extraordinary feature of *Canter* was that most, if not all, of the difficulty presented to the property owner in the lawful use of his property for his business was occasioned by the township authorities restricting parking in the vicinity of the property owner's store. *Id.* 401 A.2d at 1242–43.

In the present case, the trial court relied exclusively on *Canter* to support the affirmance of the zoning board's decision to grant Damico the dimensional variances. The trial court stated that this court affirmed the grant of the variances in *Canter*, holding that the hardship to the property owner's business was sufficient to support the variances elsewhere. However, the trial court's reading herein of our decision in *Canter* is erroneous.

This court did not hold in *Canter* that a property owner may satisfy the requirement of establishing unnecessary hardship sufficient to support the grant of a variance with respect to that parcel by showing unnecessary hardship unique or peculiar to property located elsewhere. As pointed out above, the evidence in *Canter* clearly showed that the unique physical characteristics of the property for which the variance was requested established unnecessary hardship. *Canter*, 401 A.2d at 1242.

It was only with respect to the second issue of whether the hardship imposed was purely economic did this court opine that the property owner's difficulty was caused by the township's actions in restricting surrounding parking. However, unlike the property owner in *Canter*, the record herein reveals that the parking condition imposed by Pittsburgh City Council has not interfered with Damico's operation of his existing restaurant business at 1208 Grandview Avenue since the grant of the conditional use in 1979.

Clearly, this court's decision in *Canter* did not excuse the property owner from estab-

lishing unnecessary hardship peculiar or unique to the property for which the variances were requested. Accordingly, our decision in *Canter* is not controlling herein.

■ Therefore, in the present case, Damico was required to prove a hardship unique or peculiar to the Cohasset Street property thereby necessitating the grant of the requested dimensional variances. A review of the record reveals that Damico failed to meet this burden.

For example, Damico testified before the zoning board that he purchased the Cohasset Street property to provide the required fifteen parking spaces so that he may open the second floor of his restaurant located on Grandview Avenue. Reproduced Record (R.) at 40a. He testified further that the proposed use of the parking garage is for the exclusive use of the patrons of his Cliffside Restaurant. R. at 49a. Moreover, as in *Kollock*, there was no testimony that (1) the Cohasset Street property could not possibly be used as a parking garage within the zoning code's dimensional requirements; or (2) the property could not be utilized for any other use permitted in a C–1 Neighborhood Retail District within the zoning code's dimensional requirements.[3]

Accordingly, the record reveals that Damico failed to establish an unnecessary hardship unique or peculiar to the Cohasset Street property which would support the dimensional variances granted by the zoning board in order to construct a parking garage. Clearly, all Damico has established is an economic hardship in that without the dimensional variances, he is unable to expand his existing restaurant business located as 1208 Grandview Avenue.

The order of the trial court is reversed.

3. In *Kollock*, there was no evidence showing that the land was unsuitable for residential use nor was there any evidence to show that commercial uses in the area had so surrounded the land in question as to make it unusable as zoned. *Kollock*, 367 A.2d 339.

1. Indeed, at oral argument, Damico stated that the Cohasset Street property, on which Damico

*ORDER*

NOW, this 31st day of May, 1996, the order of the Court of Common Pleas of Allegheny County, dated July 12, 1995, at No. S.A. 3729–94, is reversed.

FRIEDMAN, Judge, concurring.

I reluctantly agree with the majority because, technically, William P. Damico has failed to establish his entitlement to the requested dimensional variances which finally would enable him to enlarge his restaurant by acting on Pittsburgh's City Council's 1979 grant of a conditional use to convert the vacant second floor of the building housing the Cliffside Restaurant to restaurant use. City Council expressly conditioned the grant of the conditional use on Damico's providing fifteen dedicated parking spaces for the restaurant; however, in almost twenty years, Damico has been unable to acquire the necessary parking spaces. Damico's failure has been due, in large part, to circumstances that are unique to the Grandview Avenue area of Mount Washington in which his restaurant is located. As noted by the majority, this stretch of Grandview Avenue is home to many competing restaurants, and Damico's competitors already own most of the existing parking spaces for those restaurants.[1]

It was recognition of the unique, practical difficulties faced by Damico, as he tried to meet the parking requirements imposed by the 1979 conditional use grant, that prompted the zoning board and the trial court to grant Damico the requested variances. In granting the variances, the zoning board, affirmed by the trial court, concluded that Damico would suffer unnecessary hardship if the variances were denied because, without additional parking, Damico would be unable to open the second floor of his restaurant. Obviously, the zoning board's reasoning was based on a fifteen year search by Damico to find

sought to build the parking garage, was the only available property within reasonable walking distance from the Cliffside Restaurant. Damico also indicated that, because of the size of the lot, it would be impossible to accommodate fifteen parking spaces on the property without the requested variances.

property that could provide him with the fifteen dedicated parking spaces he needed to acquire before he could expand his restaurant. (*See* zoning board's Findings of Fact, Nos. 8, 20, 21; R.R. at 128a–29a.) Additionally, the zoning board considered that Damico's proposed parking facility would be on property zoned commercial that abutted existing parking lots and garages used by patrons of other restaurants on Grandview Avenue. Indeed, the zoning board noted that "[t]he property's use as a parking facility will in fact 'square off' the large area devoted exclusively to parking, ... and will not encroach into the residential zoned area." (R.R. at 130a.) I would agree with the zoning board's assessment of the situation here, and I consider it unfortunate that, in strictly adhering to the law, we must now defy common sense.

Further, I believe that the inability to take a common sense approach and grant Damico's request for variances is made all the more unfortunate when one considers that the Cliffside Restaurant, which clearly would benefit from the additional parking spaces, is in the area of Mount Washington zoned S–A Special District. An S–A Special District has as its intended goal the encouragement of development suitable to those portions of the City of Pittsburgh uniquely located in relation to major business, cultural and recreational areas. *Damico v. Zoning Board of Adjustment of the City of Pittsburgh*, 164 Pa.Cmwlth. 394, 643 A.2d 156 (1994). We have recognized that, where the S–A District would benefit from construction of a particular project in that district, strict adherence to zoning regulations that would preclude such construction is unwarranted. Instead, in such a case, the objectives of the S–A District should be achieved through a more flexible approach to zoning that would permit construction of the project. *Id.* Although Damico's Cohasset Street property, zoned C–1 Neighborhood Retail District, is not afforded the flexible approach reserved for S–A

Special District properties, it is undeniable that the Cliffside Restaurant and, in fact, the entire S–A District, would benefit from the construction of a parking garage on the Cohasset Street site.[2]

I must concede that, in applying the law, the majority has come to a result that is not incorrect, and, thus, I concur in that result. However, I do so reluctantly because I believe that the unique fact situation here, coupled with the uniqueness of the S–A District that abuts the property at issue, begs for a more equitable and sensible resolution. In essence, I believe that the lot, zoned C–1, and the restaurant, zoned S–A, should be treated as one property in order to permit the grant of the requested variances.

---

2. The zoning board recognized that the preferable solution to Damico's dilemma would be the formulation and implementation of a comprehensive plan for all the parking needs of the various patrons on Grandview Avenue. However, the zoning board concluded that it would be unreasonable to ask Damico to wait to open the

second floor of his restaurant until such a plan was operable, particularly because disputes between Grandview Avenue restaurant owners make it unlikely that overall parking requirements could be satisfied in an equitable manner. (Zoning board's Findings of Fact, Nos. 16–17; R.R. at 129a–30a.)