# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Eastern York School District | : | |
| | : | |
| v. | : | |
| | : | |
| Lower Windsor Township Zoning | : | |
| Hearing Board and Lower Windsor | : | |
| Township | : | |
| | : | No. 62 C.D. 2023 |
| Appeal of: Lower Windsor Township | : | Argued: December 4, 2023[1] |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: December 5, 2024

Lower Windsor Township (Township) appeals the December 30, 2022 order (Order) of the Court of Common Pleas of York County (Trial Court) that reversed the decision of the Lower Windsor Township Zoning Hearing Board (Board) denying a variance for construction of an elementary school on property owned by the Eastern York School District (District). Upon review, we reverse the Order.

---

[1] Following argument, this matter was directed to the Court's Mediation Program and the decision herein was ordered held in abeyance. *See* Commonwealth Court Order exited January 5, 2024. The matter was reinstated for decision by Order dated December 2, 2024. *See* Commonwealth Court Order exited December 2, 2024.

## I. Background and Procedural Posture

The facts underlying this matter are relatively straightforward. The District owns a 10.49-acre (456,944-square-foot) property located at 670 Cool Creek Road, Wrightsville, Pennsylvania (Property), which is situated within the Township.[2] *See* Trial Court Memorandum Opinion filed December 30, 2022 (Trial Court Opinion)[3] at 3, Reproduced Record (R.R.) at 170a; *see also* Board Decision dated January 20, 2022 (Board Decision) at 3, Finding of Fact (F.F.) 4, R.R. at 153a. The District acquired the Property in 2009 and now seeks to build an elementary school thereon. *See* Trial Court Opinion at 3, R.R. at 170a. The Property is located within the Township's Residential Zoning District and is subject to the Restricted Development Overlay (RDO). *See* Trial Court Opinion at 3, R.R. at 170a.

The District also owns an adjacent property on which the District's middle and high schools are situated. *See* Trial Court Opinion at 3, R.R. at 170a. In 2006, during the construction of the high school on the adjacent property, the District placed fill and topsoil on the Property to level an area for athletic fields. *See* Board Decision at 4, F.F. 15, R.R. at 154a. This process created some steep slopes on the Property,[4] which also has preexisting steep slopes. *See* Trial Court Opinion at 3,

---

[2] The Trial Court Memorandum Opinion filed December 30, 2022 (Trial Court Opinion) indicates that the Property is located partially within the Township and partially within neighboring Hellam Township. *See* Trial Court Opinion at 3-4, Reproduced Record (R.R.) at 170a-71a. The Board, however, found as a fact that the Property is situated within the Township. *See* Board Decision dated January 20, 2022 (Board Decision) at 3, Finding of Fact (F.F.) 4, R.R. at 153a.

[3] On March 13, 2023, the Trial Court filed a Memorandum Opinion that incorporated the Trial Court Opinion as its Pennsylvania Rule of Appellate Procedure 1925(a) opinion in the instant appeal. *See* Trial Court Memorandum Opinion dated March 13, 2023.

[4] The steep slopes created by this stockpiled soil are not the only manmade steep slopes on the Property. *See* Trial Court Opinion at 3-4, R.R. at 170a-71a. Other manmade steep slopes

R.R. at 170a; *see also* Board Decision at 4, F.F. 15-16, R.R. at 154a. The steep slopes created by the placement of fill and the creation of athletic fields have been seeded and stabilized such that they are no longer simply piles of fill that may be moved without disturbing the contours of the site. *See* Board Decision at 4, F.F. 16, R.R. at 154a. For the past 10 years, the Property has been partially used as athletic fields and partially left vacant. *See* Trial Court Opinion at 4, R.R. at 171a.

On April 9, 2021, the District sought a special exception to build a new elementary school as well as a variance to disturb steep slopes in excess of 25% gradient to build the access road and bus parking area that would be necessary for the new elementary school. *See* Trial Court Opinion at 1-2 & 4, R.R. at 168a-69a, 171a. On June 3, 2021, the Board approved the special exception for the new elementary school but split 2-2 on the requested variance,[5] which denied the variance request by operation of law. *See* Trial Court Opinion at 2 & 4, R.R. at 169a & 171a.

The District originally appealed the variance denial, but then elected to file a new variance application instead for the purpose of seeking a variance determination from the entire Board. *See* Trial Court Opinion at 2 & 5, R.R. at 169a & 172a; *see also* Variance Application dated November 8, 2021 (Application), R.R. at 31a-42a. The Board conducted a public hearing on the Application on December 16, 2021, and denied the Application, three votes to two, by decision dated January

_____

present on the Property resulted from the demolition of certain residential and agricultural structures when Mt. Pisgah Road was relocated to its current location. *See id.*

[5] The fifth Board member was absent from this meeting.

3

20, 2022.[6]  *See* Trial Court Opinion at 2 & 5, R.R. at 169a & 172a; *see also* Board Decision.

The District appealed the Board Decision to the Trial Court and the Township intervened.  *See* Trial Court Opinion at 2, R.R. at 169a.  Following oral argument conducted on October 28, 2022, the Trial Court reversed the Board Decision by order dated December 30, 2022.  *See* Trial Court Opinion at 2-3, 32 & Order.[7]  The Township then appealed to this Court.

## II. Issues

The Township raises several issues[8] on appeal.[9]  First, the Township claims that the Trial Court erred by finding ambiguity existed in the Windsor

---

[6] The Board originally voted on and denied the Application on the record at the conclusion of the December 16, 2021 public hearing.  *See* Board Hearing Transcript, December 16, 2021, at 85-86, R.R. at 127a-28a.

[7] The Order purports to reverse the Board's decision denying the District's "special exception application."  *See* Trial Court Opinion, Order.  We observe, however, that the Trial Court actually reversed the Board's determination as to the variance requested in the Application, not the previously approved special exception to build a new elementary school on the Property, which was never contested.  S*ee generally* Trial Court Opinion; *see also* Board Decision; Application.

[8] We observe that the Board, while not an appellant, submitted a brief in which it agreed with the Township's arguments and further argued that the Trial Court abused its discretion by substituting its judgment for that of the Board and by stretching existing case law in evaluating the steep slope issue in the context of *de minimis* variances.  *See* Board's Br. at 4-20.

[9] Where the trial court has taken no additional evidence, this Court's review is limited to determining whether a zoning board's findings are supported by substantial evidence or whether the zoning board made an error of law in rendering its decision. *Twp. of Exeter v. Zoning Hearing Bd.*, 962 A.2d 653, 659 (Pa. 2009).  Further, a zoning board's findings are owed deference, especially as to whether a variance applicant satisfied the unnecessary hardship criterion, in light of the zoning board's expertise and knowledge regarding local conditions. *Marshall v. City of Phila.*, 97 A.3d 323, 333 (Pa. 2014); *Azoulay v. Phila. Zoning Bd. of Adjustment*, 194 A.3d 241, 249 (Pa. Cmwlth. 2018) ("An administrative agency's interpretation of the statute it is charged to administer is entitled to deference on appellate review absent fraud, bad faith, abuse of discretion

4

Township Zoning Ordinance (Ordinance) as to whether the term "slopes" applied to natural or manmade slopes. *See* Township Br. at 3, 9-17. The Township argues that the Trial Court improperly inserted the modifier "natural" into the meaning of "slopes," causing a significant area of manmade slopes to be incorrectly omitted from the area of the Property regulated as steep slopes. *See id.*

Second, the Township claims that the Trial Court erred by not deferring to the Board's determination not to grant a *de minimis* variance for multiple reasons. *See* Township Br. at 3, 17-23. The Township argues: (1) there is no general right to a *de minimis* variance in Pennsylvania land use law; (2) the decision to grant or deny a requested *de minimis* variance is within the sound discretion of a local zoning hearing board; (3) a *de minimis* variance is not available to deviate from steep slope zoning regulations in the absence of all the traditional variance standards set forth in *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 721 A.2d 43 (Pa. 1998); and (4) if a *de minimis* variance was available, the Board properly exercised its discretion to deny a *de minimis* variance as a result of its determination about the amount of proposed areas of steep slope disturbance on the Property. *See id.*

Third, the Township argues that the Trial Court erred in determining that the District established all the necessary elements for the grant of a traditional variance. *See* Township Br. at 3, 24-34. Specifically, the Township argues that the District failed to prove unique physical circumstances or conditions that resulted in an unnecessary hardship to developing the Property in strict conformance with the Zoning Ordinance. *See id.* at 24-30. The Township argues that the Board correctly found, in the absence of unique physical features or circumstances beyond the slopes

---

or clearly arbitrary action."); *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 9 (Pa. Cmwlth. 2015).

5

themselves, that the District cannot establish an "unnecessary hardship" upon which to justify the grant of a variance. *See id.*

## III.  Discussion

### A.  Natural and Manmade Slopes in the Ordinance

In its first claim, the Township argues that the Trial Court erred by determining that ambiguity existed as to the scope and meaning of the term "steep slopes" in the Ordinance in reference to the RDO and then determining that Section 312.E.1 of the Ordinance did not pertain to manmade slopes. *See* Township Br. at 9-17.  The Township argues that the Trial Court improperly inserted the modifier "natural" into Section 312.E.1 in reference to the term "steep slopes." *See id.*  This claim turns on whether the Ordinance's prohibition contained in Section 312.E.1 against disturbing steep slopes pertains to both natural and manmade steep slopes or only to natural steep slopes.  The claim presents a question of statutory interpretation.

When interpreting the meaning of a zoning ordinance, we are guided by the principles of statutory construction with the primary objective of determining the intent of the legislative body that enacted the ordinance. *See THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014); *see also* 1 Pa.C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.").  As this Court has observed:

> In ascertaining and effectuating legislative intent, we are mindful a statute's plain language generally provides the best indication of legislative intent. *See Com. v. McClintic*, 909 A.2d 1241 (Pa. 2006).  Thus, statutory construction begins with examination of the text itself. *Se. Pa. Transp. Auth. v. Holmes*, 835 A.2d 851 (Pa. Cmwlth. 2003).

6

In reading the plain language of a statute, "words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a).

Moreover, although we must "listen attentively to what a statute says[,] one must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001). We may not insert a word the legislature failed to supply into a statute.

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). "However, if we deem the statutory language ambiguous, we must then ascertain the General Assembly's intent by statutory analysis, wherein we may consider numerous relevant factors." *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013) (citing 1 Pa.C.S. § 1921(c)). "An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014).

*Interstate Gas Supply, Inc. v. Pub. Util. Comm'n*, 298 A.3d 1181, 1187-88 (Pa. Cmwlth. 2023) (emphasis and brackets omitted).

Further, Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC)[10] provides as follows:

In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the

---

[10] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1.

7

property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

53 P.S. § 10603.1. Generally, a "zoning officer shall administer the zoning ordinance in accordance with its literal terms[.]" Section 614 of the MPC, 53 P.S. § 10614. Additionally, "[w]here [a] statute or ordinance defines a word or phrase therein the court is bound thereby." *Hughes v. Sch. Dist. of Pittsburgh*, 108 A.2d 698, 699 (Pa. 1954) (emphasis omitted). As our Supreme Court has explained:

A legislative body may, in a statute or ordinance, furnish its own definitions of words and phrases used therein in order to guide and direct judicial determination of the intendments of the legislation although such definitions may be different from ordinary usage; it may create its own dictionary to be applied to the particular law or ordinance in question.

*Hughes*, 108 A.2d at 699 (quoting *Sterling v. City of Phila.*, 106 A.2d 793, 795 (Pa. 1954)). Further, "[w]ith respect to zoning matters, undefined terms are given their plain meaning, and any doubt is resolved in favor of the landowner and the least restrictive use of the land." *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015) (some brackets and internal quotation marks omitted).

Additionally, we observe that "a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. Such deference is appropriate because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting that ordinance." *Weiler v. Stroud Twp. Zoning Hearing Bd.*,

8

300 A.3d 1121, 1127 (Pa. Cmwlth. 2023), *reargument denied* (Sept. 20, 2023) (internal quotation marks and citations omitted); *see also Marshall v. City of Phila.*, 97 A.3d 323, 333 (Pa. 2014).

With this background in mind, we turn to the relevant Ordinance definitions and sections. The Ordinance defines neither "natural slopes" nor "manmade slopes." The Ordinance does, however, expressly define "steep slopes" as:

> A. Areas of land, 3,000 square feet or greater, where the grade is 15% or greater. Steep slopes are divided into two categories:
>
>> (1) Precautionary slopes are those areas of land where the grade is 15% to 25%.
>>
>> (2) Prohibitive slopes are those areas of land where the grade is greater than 25%.

Ordinance, Section 470-6(A), Steep Slopes,[11] R.R. at 223a. In terms of the Township's RDO specifically, the Ordinance explains that "[s]lopes in excess of 15% shall be considered to be included within the [RDO] District." Ordinance,

---

[11] The Ordinance's definition of "steep slopes" continues with an explanation of how to correctly determine slopes:

> B. Slope shall be measured as the change in elevation over the horizontal distance between consecutive contour lines. Slope shall be measured over three consecutive two-foot contour intervals (six cumulative vertical feet of slope). All slope measurements shall be determined by a topographic survey signed and sealed by a registered surveyor or engineer licensed to practice in Pennsylvania.

Ordinance, Section 470-6(B).

9

Section 312.B.1, R.R. at 243a. Further, Ordinance Section 312.E.1 expressly provides the following conservation scheme for steep slopes within the RDO:

> (1) Conservation of Steeply Sloped Lands.
>
> > (a) No site disturbance shall be allowed on slopes exceeding 25%.
> >
> > (b) Disturbance on slopes between 15% and 25% shall require the submission of a detailed site grading plan, which shall contain, at a minimum, the following information:
> >
> > > [1] Existing contours;
> > >
> > > [2] Existing areas within the [RDO] District as defined herein;
> > >
> > > [3] Location of existing and proposed structures, including vehicular accesses;
> > >
> > > [4] Proposed erosion and sedimentation control measures;
> > >
> > > [5] Proposed limits of disturbance;
> > >
> > > [6] A tabulation of the acreage of the area within the [RDO] District which would be impacted by the proposed activity.

Ordinance, Section 312.E.1,[12] Design and Performance Standards, R.R. at 243a-44a.

The Board found no ambiguity in Section 312.E.1 regarding whether the conservation scheme for steep slopes within the RDO applied to naturally occurring or manmade steep slopes. *See* Board Decision 5 & 8, R.R. 155a & 158a.

_____

[12] Ordinance Section 312.E.1 has been codified as Section 470-18.E.1. *See* R.R. at 243a.

10

The Board expressly noted that Ordinance Section 312.E.1 "does not differentiate between natural and man[]made steep slopes." *See* Board Decision at 5 & 8, R.R. at 155a & 158a. Thus, the Board found that the "steep slopes" referenced in Section 312.E.1 encompassed both natural and manmade steep slopes. *See id.* This interpretation was entitled to deference from a reviewing court. *See Marshall*, 97 A.3d at 333; *Weiler*, 300 A.3d at 1127.

On review, however, the Trial Court found ambiguity regarding whether the term "steep slopes" in Section 312.E.1 includes only natural slopes or both natural and manmade slopes. *See* Trial Court Opinion at 17-19. To resolve this purported ambiguity, the Trial Court reviewed the language of Ordinance Section 312.A,[13] which provides:

> Purpose. The [RDO] District promotes conservation of the land in the Township possessing natural features identified as essential to the environmental health, economy and rural character of the community. These areas include lands with severe developmental constraints, such as steep slopes, wetlands and floodplains. Protection of natural features provides benefits such as soil erosion control, improved soil quality and enhanced water quality by means of filtering out harmful substances from runoff, enriched habitat and biodiversity, flood control, and the protection of buildings, roads and other property. To protect life and property, preserve the natural and open space character of the Township, as well as the physical and environmental amenities of these areas, new growth and development is directed to appropriate development areas, away from lands containing the restricted development features.

---

[13] Ordinance Section 312.A has been codified as Section 470-18.A. *See* R.R. at 243a.

11

Ordinance, Section 312.A, R.R. at 243a. Based on the references to "natural features" and "natural and open space" in the text of Section 312.A, the Trial Court found that the language of Section 312.E.1 forbidding steep slope disturbance referred only to naturally occurring steep slopes. *See* Trial Court Opinion at 17-19. Interpreting this alleged ambiguity in favor of the landowner, the Trial Court determined that Section 312.E.1 applied only to natural steep slopes and not manmade steep slopes. *See id.* at 19-20.

We do not agree with the Trial Court's determination that the language of Section 312.E.1 contains ambiguity regarding the slopes to which it applies. "An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Weiler*, 300 A.3d at 1126 (citing *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 824 (Pa. 2013)); *see also Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014). The plain language of Section 312.E.1 permits disturbance of slopes between 15% and 25% only upon the submission of a detailed site grading plan and entirely disallows disturbance of slopes in excess of 25%. *See* Ordinance, Section 312.E.1. Section 312.E.1 does not qualify the term "steep slopes" as defined in Ordinance Section 470-6 and makes no distinction between manmade and natural slopes. Thus, under the plain language of the section, Section 312.E.1 applies to all existing slopes within the RDO that exceed 15%.[14] The Board recognized that Section 312.E.1 contains no distinction regarding the slopes to which it applies based on the background of slope creation. *See* Board Decision at 5 & 8,

---

[14] We observe that the Ordinance's general "steep slopes" definition likewise makes no distinction between natural and manmade slopes. *See* Ordinance, Section 470-6, Steep Slopes, R.R. at 223a.

12

R.R. at 155a & 158a. Simply put, Section 312.E.1 applies to all steep slopes (as defined by Ordinance Section 470-6) within the RDO, regardless of how a given slope was created. As such, the language of Section 312.E.1 covers both "natural" and "manmade" slopes, and any distinction between the two is immaterial for the purpose of a Section 312.E.1 analysis. The ambiguity suggested by the Trial Court based on a purported distinction between "natural" and "manmade" slopes is not an actual ambiguity, but instead simply a suggested conflicting interpretation of Section 312.E.1. Thus, the Trial Court erred when it determined that an ambiguity requiring examination of sources outside the text of Section 312.E.1 existed. *See Tri-Cnty. Landfill*, 83 A.3d at 510.

To the extent the Trial Court relied on the language of Section 312.A, which discusses the purpose of the RDO, to support its examination of the intent of the governing body that enacted the Ordinance,[15] we observe that such an examination is permitted only in the face of textual ambiguity, which, as discussed *supra*, does not exist in Section 312.E.1. *See Interstate Gas Supply*, 298 A.3d at 1187-88. We further observe that nothing in the language of Section 312.A regarding a desire to protect natural features, including natural steep slopes, is mutually exclusive of a conservation scheme that also regulates the disturbance of manmade steep slopes. *See* Ordinance Section 312.A. Even when considered together with the language of Section 312.A, a distinction between natural and manmade slopes is simply not necessary to give full meaning to Section 312.E.1. *See id.* Additionally, the question of the purpose of the RDO is a further red herring where, as here, the seeding and stabilization and the passage of a considerable amount of time has transformed the disturbances of the Property into part of the

---

[15] *See* Trial Court Opinion at 17-19, R.R. at 184a-86a.

13

natural landscape that "are no longer fill piles that may be moved without disturbing the contours of the site." Board Decision at 4, F.F. 16, R.R. at 154a.[16]

We further observe that the governing body that enacted the Ordinance could have included distinctions in classifications of slopes to which the Ordinance applies, as it did with the definition of "steep slopes," which includes a definitional distinction between "precautionary" and "prohibitive" slopes. *See* Ordinance, Section 470-6, Steep Slopes, R.R. at 223a. The Ordinance could have made a similar distinction between natural and manmade slopes but did not. The Ordinance does not contain, in Section 312.E.1 or elsewhere, the natural versus manmade steep slopes distinction that the Trial Court purports exists in Section 312.E.1. Thus, by drawing a distinction between "natural" and "manmade" slopes for the purpose of the conservation scheme present in Ordinance Section 312.E.1, the Trial Court effectively and improperly inserted the additional, modifying term "natural" into the text of Section 312.E.1 where it had not previously appeared. This was error. *See Interstate Gas Supply*, 298 A.3d at 1187-88 (noting that it is not for a reviewing court to insert into an ordinance terms, definitions, or distinctions that the legislature or governing body that enacted it chose to omit).[17]

---

[16] We observe that, under the Trial Court's interpretation of Section 312.E.1, once a slope is created by the efforts of humanity, no completion of construction or expiration of time would allow slopes so created to fall under the express conservation scheme of Section 312.E.1.

[17] We observe that *Worth v. Solebury Township Zoning Hearing Board* (Pa. Cmwlth., No. 1983 C.D. 2007, filed Sept. 8, 2008), cited by the Trial Court, *see* Trial Court Opinion at 17-18, R.R. at 184a-85a, does not meaningfully support a finding of ambiguity in the language of Section 312.E.1. While this Court's finding in *Worth* that evidence of a distinction between natural and manmade slopes in a previous version of an ordinance contrasted with the lack of such a distinction in the current version of the ordinance supported a finding that the later version intended to remove such distinction, the contrapositive – that a lack of evidence of a distinction in a previous ordinance

14

## B. Variance Determination

The Township's next two claims involve the Trial Court's determinations regarding the District's request for a variance[18] for the purpose of disturbing the Property's steep slope areas. *See* Township Br. at 17-34. The first of these claims concerns the grant of a *de minimis* variance, while the second claim concerns the granting of a traditional variance. We will discuss each in turn.

### 1. *De Minimis* Variance

First, the Township argues that the Trial Court erred when it concluded that the Board abused its discretion by not approving the District's proposed steep slope disturbance as a *de minimis* variance and thereafter determining that the Board was required to approve the District's request as a *de minimis* variance. *See* Township Br. at 17-23. The Township argues that the Trial Court should have deferred to the Board's determination that the requested variance was not *de minimis*. *See id.*

"A *de minimis* variance may be granted, even where the strict requirements for a variance have not been met, where the variation requested is minor and rigid compliance is not necessary to protect the public policy concerns of the ordinance." *Lench v. Zoning Bd. of Adjustment of City of Pittsburgh*, 13 A.3d 576, 581 (Pa. Cmwlth. 2011). This Court has explained that "there is no general right to a *de minimis* variance in Pennsylvania[.]" *200 W. Montgomery Ave.*

version indicates a distinction in the current ordinance version – is not true. Accordingly, *Worth* does not aid our analysis of the specific facts of the instant matter.

[18] A variance is a request seeking to vary a requirement in the zoning ordinance. Robert S. Ryan, Pennsylvania Zoning Law and Practice § 6.1.2 (2001). As this Court has explained, "[a] variance is an extraordinary exception and should be granted sparingly[.]" *Heisterkamp v. Zoning Hearing Bd. of City of Lancaster*, 383 A.2d 1311, 1314 (Pa. Cmwlth. 1978).

*Ardmore, LLC v. Zoning Hearing Bd. of Lower Merion Twp.*, 985 A.2d 996, 1001 (Pa. Cmwlth. 2009). Instead,

> [t]he grant of a *de minimis* variance is a matter of discretion with the local zoning board. A *de minimis* variance may be granted where the variation requested is minor and rigid compliance with the zoning ordinance is not necessary to protect public policy concerns. There are no set criteria for determining what will be considered *de minimis*. Instead, the grant of a *de minimis* variance depends upon the circumstances of each case.

*Hawk v. City of Pittsburgh Zoning Bd. of Adjustment*, 38 A.3d 1061, 1066 (Pa. Cmwlth. 2012) (internal citations, original emphasis, and footnote omitted); *see also Coyle v. City of Lebanon Zoning Hearing Bd.*, 135 A.3d 240, 245 (Pa. Cmwlth. 2016) (quoting *Nettleton v. Zoning Bd. of Adjustment,* 828 A.2d 1033, 1038 (Pa. 2003) (explaining that "the *de minimis* zoning doctrine authorizes a variance where the deviation [from the requirements of a zoning ordinance] is relatively minor and strict compliance is not necessary to protect the public interest")); *Worth v. Solebury Twp. Zoning Hearing Bd.* (Pa. Cmwlth., No. 1983 C.D. 2007, filed Sept. 8, 2008)[19] slip op. at 16 (also quoting *Nettleton*, 828 A.2d at 1038).

In reviewing a *de minimis* variance claim, we must recall that "[a] variance is a departure from the exact provisions of a zoning ordinance." *Abbotts Square Condo. Ass'n v. City of Phila., Zoning Bd. of Adjustment* (Pa. Cmwlth., No. 1645 C.D. 2018, filed May 8, 2020). Accordingly, a slope variance necessarily seeks

---

[19] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value. Further, we observe that this Court filed an order on July 12, 2023, directing that the cited decision be reported.

permission to depart from a zoning ordinance's restrictions on building on slopes in excess of specified slope percentages. The parties argue that the metric by which this departure is measured is the area of the steep slopes to be disturbed against the total area of the Property. *See* Ordinance, Section 312.E.1(1)(b)(6) (requiring, as part of an application to disturb steep slopes within the RDO, the submission of a detailed site grading plan, which contains, *inter alia*, "[a] tabulation of the acreage of the area within the [RDO] District which would be impacted by the proposed activity"), R.R. at 244a; *see also* Ordinance, Section 470-6(A) (defining "steep slopes" as "[a]reas of land, 3,000 square feet or greater, where the grade is 15% or greater"), R.R. at 223a. Thus, in the instant matter, the question of a *de minimis* variance hinges on the total amount of disturbance to the Property's steep slopes, which in turn depends on whether or not the manmade portions of the Property are included in the total calculated steep slopes disturbance area under Ordinance Section 312.E.1. The District argued before the Board that only natural slopes should be considered and that the manmade areas could be ignored for the purposes of calculating the steep slope disturbance area total and that, therefore, the disturbance area comprised only .07 acres, or 4% of the Property. *See* Board Decision at 4, F.F. 19-20, R.R. at 154a. If the manmade slopes are included in the disturbance calculation as the Township argued, however, the disturbed area increases to approximately 17.3% of the Property. *See* Board Decision at 5, F.F. 21, R.R. at 155a. The Board rejected the District's contention that the manmade steep slopes could be ignored and found in its discretion that the resulting 17.3% disturbance figure was the correct measure and was not *de minimis*. *See* Board Decision at 5, F.F. 22-24, R.R. at 155a.

17

For the reasons discussed *supra*, we agree with the Board that the Section 312.E.1 steep slope disturbance area calculation properly includes both the Property's manmade and natural steep slopes. Regarding the "man[]made" steep slopes to be disturbed, we note that the Board found as a fact that these disturbances have become part of that land. *See* Board Decision at 4, F.F. 16, R.R. at 154a (finding as a fact that the manmade slopes that were seeded and stabilized "are no longer fill piles that may be moved without disturbing the contours of the site"). Thus, under the District's plan, 17.3% of the Property would constitute areas of steep slope disturbance. We further find no error with the Board's determination that such a percentage of disturbed area cannot properly be viewed as *de minimis*. *See* Board Decision at 5, F.F. 24, R.R. at 155a; Board Decision at 8, R.R. at 158a. Such a determination was well within the Board's discretion, and we must defer to that exercise of discretion. *See Hawk*, 38 A.3d at 1066.

Additionally, the Board also concluded that, "even if the man[]made areas could be ignored, the area comprising only the natural slopes to be disturbed argued by the [District] constitutes over 3,000 square feet and is a significant area that the Board finds is not *de minimis*." *See* Board Decision at 8, R.R. at 158a. While this is a much closer call, we again note that this determination made by the Board in the alternative, like the determination regarding the 17.3% disturbance figure, was within the Board's discretion and is afforded deference on review. *See Hawk*, 38 A.3d at 1066. In any event, as a result of our determinations regarding the proper inclusion of all slopes within the steep slope disturbance calculations, we need not consider whether the Board properly exercised its discretion as to the much smaller disturbance area that would have resulted from excluding manmade steep slopes from the steep slopes calculation.

For these reasons, we find that the Trial Court erred by finding the Board abused its discretion and thereafter determining that the District was entitled to a *de minimis* variance based on the proposed steep slope disturbance area. *See* Trial Court Opinion at 20-22.

## 2. Traditional Variance

In its third argument, the Township argues that the Trial Court erred by reversing the Board's determination that the District failed to establish the traditional elements necessary for the grant of a variance. *See* Township Br. at 24-34. The Township argues that the District failed to demonstrate that the Property contains some unique physical circumstance or condition that results in an unnecessary hardship in developing the Property in conformity with the requirements of the Ordinance. *See id.* We agree.

Section 803.C of the Ordinance[20] sets forth standards for awarding traditional variances in the Township. *See* Ordinance, Section 803.C.[21] Ordinance Section 803.C reads:

> C. Standards for Variance: Where there is unnecessary hardship, the Board may grant a variance in the application of the provisions of this Ordinance provided that the following findings are made where relevant in a given case:
>
> 1. There are unique physical circumstances or conditions, including (a) irregularity, narrowness, or shallowness of lot size or shape, or (b)

---

[20] Ordinance Section 803.C has been codified as Section 470-150.C. *See* R.R. at 315a.

[21] We observe that Section 803.C of the Ordinance closely mirrors Section 910.2 of the MPC, with only minor, non-substantive stylistic editing differences to MPC Section 910.2. *See* Section 910.2(a) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).

19

exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the Zoning Ordinance in the neighborhood or district in which the property is located.

2. Because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

3. The unnecessary hardship has not been created by the [applicant].

4. The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

5. The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Ordinance, Section 803.C. Under this standard, to be granted a variance, the District first must demonstrate a unique physical circumstance or condition of the Property that created an unnecessary hardship to developing the Property. *See* Ordinance, Section 803.C.

Where a court is faced with a dimensional variance as opposed to a use variance, our Supreme Court has articulated a more relaxed standard for granting a

20

variance requiring a lesser quantum of proof. Under this relaxed standard, when addressing the element of unnecessary hardship, "[c]ourts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Hertzberg*, 721 A.2d at 50. Although *Hertzberg* eased the requirements for a variance, it did not remove them. *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015). Despite the more relaxed standard set forth in *Hertzberg*, it is still the case that "[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling." *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011). Further, a variance "is appropriate only where the *property*, not the person, is subject to hardship." *Yeager v. Zoning Hearing Bd. of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (quoting *Szmigiel v. Kranker,* 298 A.2d 629, 631 (Pa. Cmwlth. 1972)) (emphasis in original) (internal quotation marks and citation omitted). "[A] variance will not be granted solely because the applicant will suffer an economic hardship if he does not receive the same." *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of Phila.*, 921 A.2d 536, 545 (Pa. Cmwlth. 2007), *aff'd sub nom. Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132 (Pa. 2009).

As it is neither a dimensional variance like a setback nor a use variance seeking authorization for a use outside those permitted by a zoning ordinance, a steep slope variance represents a hybrid variance that occupies a gray area in zoning. *See Zappala Grp., Inc. v. Zoning Hearing Bd., Town of McCandless*, 810 A.2d 708, 711 (Pa. Cmwlth. 2002), *as amended* (Nov. 15, 2002); *see also Pohlig Builders, LLC v.*

*Zoning Hearing Bd. of Schuylkill Twp.*, 25 A.3d 1260, 1267 (Pa. Cmwlth. 2011). Such hybrid variance requests are subject to the more relaxed *Hertzberg* standard. *See id.* However, as with dimensional variances, although the *Hertzberg* standard relaxes the requirements for establishing unnecessary hardship, the standard does not negate the requirement that steep slope variance applicants prove each of the other conditions listed in the zoning ordinance in question. *See Singer*, 29 A.3d at 149.

In the instant matter, regarding the first variance factor, the Board found that the District did not demonstrate an unnecessary hardship because the physical feature of the Property that occasioned the Application – the steep slopes – was the same feature that triggered application of the constraints contained in the Ordinance. *See* Board Decision at 9-11. The Board relied on this Court's decision in *Boyer v. Zoning Hearing Board of Franklin Township*, 987 A.2d 219 (Pa. Cmwlth. 2010), for the proposition that "the claimed hardship cannot be the very thing that dictates application of [a] zoning ordinance provision." Board Decision at 10, R.R. at 160a. In *Boyer*, the landowners sought a variance from restrictions in a Steep Slope Conservation Overlay zone that prohibited construction on a plateau surrounded by slopes in excess of 15%, on which their property was located. *See Boyer*, 987 A.2d at 220. The zoning board rejected the landowners' argument that it would be impossible to develop their property in conformance with the zoning ordinance because their property contained an 8.5-acre plateau surrounded by steep slopes in excess of 15%. *See id.* at 222. On review, this Court affirmed, explaining:

> Having considered [the landowners'] argument, we note that it is striking for what it does *not* purport; [the landowners] do not argue that the unnecessary hardship has not been caused by "the circumstances or conditions generally created by the provisions of the zoning

22

ordinance in the neighborhood or district in which the property is located." Section 910.2(a)(1) of the MPC, 53 P.S. § 10910.2(a)(1). Presumably, [the landowners] fail to make this argument because they cannot legitimately do so where even they admit that they "are unable to use the tract they own to erect a house because of the Steep Slope Overlay Regulation." ([Landowners'] brief at 19.) In other words, if it were not for the fact that the [p]roperty was within the [Steep Slope Conservation Overlay], there is no question that [the landowners] could erect their single-family residence on an eight-and-one-half-acre plateau in the Open Space Zone. Given [the landowners'] failure to show that their unnecessary hardship arises from the unique physical circumstances of their property as opposed to the circumstances generally created by the [zoning o]rdinance, an undoubtedly relevant criterion, we cannot agree with [the landowners'] assertion that the [zoning hearing board] abused its discretion or committed legal error in denying their variance request.

*Boyer*, 987 A.2d at 223.

Here, the Board found as a fact that "[t]he only physical condition of the [Property] identified and argued by [the District] as constituting the hardship is the presence of the steep slopes." Board Decision at 6, F.F. 32, R.R. at 156a. The Board further determined that "there are no unique physical features of the [Property] in question that are not circumstances or conditions generally created by the [O]rdinance that create undue hardship." Board Decision at 6, F.F. 34, R.R. at 156a. As a result, the Board concluded:

In this case, there are no unique physical features or circumstances of the [P]roperty other than the existence of the steep slopes identified to justify the variance. Indeed, but for the existence of the steep slopes, there would be nothing preventing the [District] from utilizing the parcel as proposed. However, as decided in *Boyer*, the feature

23

> that dictates application of the [O]rdinance provision cannot be the same feature that constitutes a hardship.

Board Decision at 11, R.R. at 161a.

Rather than disputing the Board's finding that the steep slopes were the only physical condition identified as constituting a hardship on the Property,[22] the Trial Court attempted to draw a distinction between the *existence* of the steep slopes and the *dispersion* of the steep slopes throughout the Property. *See* Trial Court Opinion at 28-29, R.R. at 195a-96a. We acknowledge the strengths and subtleties of both the Board's and the Trial Court's positions; however, we need not pass on this aspect of the Application due to the glaring inability of the District to meet the third required variance factor under the Ordinance. While the Board did not examine the traditional variance factors beyond the existence of a hardship, we observe that the District's insistence on treating the manmade slopes differently from natural slopes precludes it from establishing the third required factor for a traditional variance – that the applicant has not created the claimed unnecessary hardship. The argument that the manmade steep slopes of the Property should be treated differently from preexisting natural slopes necessarily concedes that the District, through its previous placement of the fill and topsoil on the Property, created the hardship from which it seeks relief. This fact also precludes the grant of a traditional variance as to the Property's "man[]made" slopes. *See* Ordinance, Section 803.C.

---

[22] We note that the Trial Court agreed with the Board that a claimed unnecessary hardship cannot be the thing that requires the application of a provision of the Ordinance in the first place. *See* Trial Court Opinion at 26, R.R. at 193a.

24

## IV. Conclusion

For the foregoing reasons, we reverse the Trial Court Opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eastern York School District :
:
:
v. :
:
Lower Windsor Township Zoning :
Hearing Board and Lower Windsor :
Township :
: No. 62 C.D. 2023
Appeal of: Lower Windsor Township :

# O R D E R

AND NOW, this 5th day of December, 2024, the December 30, 2022 order of the Court of Common Pleas of York County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge